IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BURHAN SUBHI FARID AL SHAIKH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:17CV1005 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Burhan Subhi Farid Al Shaikh, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 14; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of January 1, 2013. (Tr. 61, 208-24.)  Upon denial of those applications initially (Tr. 60-79, 108-19) and on reconsideration

(Tr. 80-105, 123-40), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 141-42). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 33-59.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 199, 321-27), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

    1. [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2018.

    2. [Plaintiff] has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date.

. . .

    3. [Plaintiff] has the following severe impairments: degenerative disc disease of the cervical spine and status post left mastectomy.

. . .

    4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

    5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except he can occasionally climb ladders, ropes, or scaffolds; frequently balance; frequently crawl; and frequently reach overhead and in front with the left upper extremity. He must avoid concentrated exposure to extreme cold.

2

.  .  .

6.  [Plaintiff] is capable of performing past relevant work as a transportation inspector and transportation manager.  This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

.  .  .

7.  [Plaintiff] has not been under a disability, as defined in the [] Act, from January 1, 2013, through the date of this decision.

(Tr. 20-26 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial

evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*,
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in finding [Plaintiff] had the [RFC] to perform light work" (Docket Entry 13 at 7 (standard capitalization applied and single-spacing omitted)); and

---

[3] (...continued)
pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) "[t]he ALJ erred in the credibility determination" (id. at 10 (standard capitalization applied and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 3-14.)

## 1. RFC

Plaintiff's first assignment of error asserts that "[t]he ALJ erred in finding [Plaintiff] had the [RFC] to perform light work." (Docket Entry 13 at 7 (standard capitalization applied and single-spacing omitted).) In particular, Plaintiff argues that the ALJ "failed to assess [Plaintiff's] capacity to perform relevant functions despite contradictory evidence in the record," and "failed to perform a function by function analysis to support the finding that [Plaintiff] is capable of performing light work." (Id. at 9 (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016)).) According to Plaintiff, the ALJ instead "simply made a blanket statement that he [had] performed a 'careful consideration of the evidence' without offering justification for the RFC finding." (Id. (quoting Tr. 23).) Plaintiff maintains that, contrary to the ALJ's finding at step four of the SEP (see Tr. 25-26), Plaintiff could not perform his skilled past relevant work as a transportation inspector and transportation manager, because he "would be limited to unskilled work due to concentration problems and side effects from medication," and because those jobs "would

8

not accommodate a sit/stand option." (Docket Entry 13 at 10.) Plaintiff points out that, "[g]iven [his] age and inability to perform skilled work[,] he would be disabled at both [the] light and sedentary exertional levels per the Medical[-]Vocational Guidelines." (Id.) Those contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant

9

administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 96-8p").

The United States Court of Appeals for the Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

A. Sit/Stand Option

In support of Plaintiff's allegation that the ALJ erred by failing to include a sit/stand option in the RFC, Plaintiff points to his testimony that "he stopped work due to the severe pain in his left leg up to his lower back," that "[i]t was difficult for him to sit for long periods of time," and that "his employer even changed his chair but it did not help." (Docket Entry 13 at 10 (citing Tr. 43-44).) However, Plaintiff has failed to identify evidence that would have compelled the ALJ to adopt a sit/stand option in the RFC.

As an initial matter, Plaintiff relies solely on his own testimony to support the necessity of a sit/stand option, but the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 23) and, as discussed below, the ALJ supported his analysis of the consistency of Plaintiff's statements with substantial evidence. Moreover, as the ALJ recognized, "the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] [wa]s disabled or even ha[d] limitations greater than those determined in th[e ALJ's] decision." (Tr. 25.) The fact that none of Plaintiff's medical providers opined that Plaintiff required a sit/stand option significantly undermines Plaintiff's argument. See Lamonds v. Berryhill, No.

11

1:16CV1145, 2017 WL 1906755, at *10 (M.D.N.C. May 9, 2017) (unpublished) ("[T]he ALJ's omission of a sit/stand option from the RFC . . . does not constitute error, because no medical source of record opined that Plaintiff required a sit/stand option."), recommendation adopted, slip op. (M.D.N.C. May 24, 2017) (Schroeder, J.); Manning v. Colvin, No. 1:10CV928, 2014 WL 509198, at *8 (M.D.N.C. Feb. 7, 2014) (unpublished) (Webster, M.J.) (deeming it "significant that the record [wa]s barren of a relevant opinion that [the p]laintiff [wa]s permanently disabled or treatment records indicating restrictions more significant than those set forth in the RFC" (citing Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999)), recommendation adopted, 2014 WL 1224744 (M.D.N.C. Mar. 24, 2014) (unpublished) (Beaty, S.J.).

Furthermore, the ALJ discussed objective findings in the record that undercut Plaintiff's claimed need for a sit/stand option:

- Plaintiff continued to work part-time through early 2016 (Tr. 20, 25);

- "[I]n March and June of 2014, [Plaintiff] appeared in no acute distress and was 'well overall'" (Tr. 23);

- In July 2014, Plaintiff exhibited 5/5 strength in his lower extremities (see Tr. 23-24);

- In May 2015, Plaintiff reported that he remained able to garden (see Tr. 24);

- "In July 2015, [a] whole-body bone scan showed . . . only mild degenerative uptake in the bilateral knees" (id.);

12

- "In August 2015, physical examination showed . . . 4/5 strength in the hips, and 5/5 strength in the knees" (id.);

- "In April 2016, . . . [p]hysical examination showed largely benign findings including no focal neurological deficits, normal sensory and motor function in the lower extremities, normal range of musculoskeletal motion, [and] 5/5 strength" (id.);

- "By July 2016, [Plaintiff] denied joint or muscle pain" and "did not appear in acute distress" (id.).

Under such circumstances, Plaintiff has not shown that the ALJ erred by omitting a sit/stand option in the RFC.

B. Unskilled Work

Plaintiff next contends that the ALJ erred by not restricting Plaintiff to unskilled work in the RFC (and by finding Plaintiff could perform his skilled past relevant work), because Plaintiff "would be limited to unskilled work due to concentration problems and side effects from medication." (Docket Entry 13 at 10.) To bolster that contention, Plaintiff notes that an "MRI showed severe degenerative changes in the cervical spine with stenosis at multiple levels" (id. (citing Tr. 690-91)), while also emphasizing his testimony that "[h]is neck pain is constant and the pain medication makes him sleepy" (id. (citing Tr. 47-48)), and that "his concentration is a problem" (id. (citing Tr. 52)). This challenge to Plaintiff's RFC fall short.

To the extent Plaintiff relies on his own testimony to buttress his claimed limitation to unskilled work, as stated above,

13

the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 23) and, as discussed below, the ALJ supported his analysis of the consistency of Plaintiff's statements with substantial evidence. Moreover, although Plaintiff cites to a cervical spine MRI showing severe degenerative changes to demonstrate that "constant" neck pain affected his concentration (Docket Entry 13 at 10 (citing Tr. 690-91)), Plaintiff conflates the diagnosis of a condition with functional limitations arising out of that condition. See McCoy v. Astrue, Civ. No. 1:10-3139-RBH-SVH, 2012 WL 1015785, at *22 (D.S.C. Feb. 10, 2012) (unpublished) ("[The p]laintiff continues to confuse objective findings of her diagnoses with objective findings supporting her alleged functional limitations. The MRI is evidence of [the p]laintiff's condition, not her functional limitations."), recommendation adopted, 2012 WL 1015773 (D.S.C. Mar. 23, 2012) (unpublished). Furthermore, no medical provider of record identified any restrictions based on Plaintiff's alleged difficulty concentrating, much less limited Plaintiff to unskilled work – a fact that defeats Plaintiff's argument. See Manning, 2014 WL 509198, at *8.

In short, Plaintiff's first assignment of error fails to warrant relief.

14

## 2. Symptom Severity

Lastly, Plaintiff maintains that "[t]he ALJ erred in finding [Plaintiff's] statements not fully credible," because "[t]he evidence shows that he is far more limited in his ability to perform work activities than found by the ALJ." (Docket Entry 13 at 11 (emphasis added).)[5] In that regard, Plaintiff contends that the ALJ should have credited Plaintiff's testimony that "he had difficulty sitting for long periods due to pain," that, "[a]fter 45 minutes he would have to change position to relieve pain," that "[h]e can only lift five pounds" (id. (citing Tr. 49, 52)), and that "[h]is regular daily activities are significantly limited due to pain" (id. at 12 (citing Tr. 53)). According to Plaintiff, the ALJ's crediting of that testimony would have "suppor[ed] a sit/stand option in the RFC" (id. at 11), and "eliminate[d] light jobs, including [Plaintiff's] past work" (id. at 11-12). That argument fails as a matter of law.

Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017)

---

[5] Contrary to Plaintiff's allegations (see Docket Entry 13 at 11), the ALJ labored under no obligation to assess the credibility of Plaintiff's statements. Effective March 28, 2016, the Social Security Administration superseded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use th[at] term." SSR 16-3p, 2017 WL 5180304, at *2. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *2 n.1.

15

("SSR 16-3p") and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

16

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8.

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons

17

explained in [the ALJ's] decision." (Tr. 23.) The ALJ further supported those findings as follows:

> There are . . . several reasons why [Plaintiff's] statements are not entirely consistent with the evidence. First, clinical presentations, the frequency of care sought, and the level of care recommended and provided are inconsistent with [Plaintiff's] allegations of debilitating symptoms and limitations. Although [Plaintiff] alleged debilitating pain, weakness, and numbness in the neck, shoulders, and upper extremities, there is no evidence that symptoms worsened to the point where he required extended inpatient treatment. . . . [P]hysical therapy helped improve mobility and functioning. He also never appeared in acute distress during outpatient visits, suggesting that pain symptoms were not as severe or intense as alleged. Second, . . . the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that [Plaintiff's] daily activities were, at least at times, somewhat greater than [Plaintiff] generally reported. Third, the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision. Fourth, . . . x-rays of the lumbar spine and right shoulder showed mild findings, suggesting that pain was not as intense as alleged. For these reasons, [Plaintiff's] statements are not entirely consistent with the evidence and any limitations imposed by [Plaintiff's] impairments are accounted for sufficiently in the [RFC].

(Tr. 25.)

In the face of that analysis by the ALJ, Plaintiff does not attack any of the grounds, quoted above, the ALJ provided for finding Plaintiff's statements not entirely consistent with the record. (See Docket Entry 13 at 10-12.) Instead, Plaintiff merely contends that "[t]he ALJ erred in finding [Plaintiff's] statements not fully credible" (id. at 11), and "in failing to give

18

significant weight to [Plaintiff's] testimony" (id. at 12). Plaintiff's argument amounts to an impermissible request that the Court simply reweigh the conflicting evidence regarding Plaintiff's subjective symptoms, which remains the province of ALJ. See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." (brackets omitted)).

In sum, Plaintiff's second issue on review does not demonstrate entitlement to reversal or remand.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 8, 2019